IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KUDAKWASHE BHEJANA, §
§
Plaintiff, §
§
v. § 1:25-CV-2009-RP
§
LAWRENCE WARD, et al., §
§
Defendants. §

## ORDER

Before the Court is Defendants'[1] Amended Motion to Dismiss Plaintiff's Complaint, (Dkt. 14), Plaintiff Kudakwashe Bhejana's ("Plaintiff") Response, (Dkt. 17), and Defendants' Reply, (Dkt. 19). Having considered the parties' submissions, the record, and the applicable law, the Court issues the following order.

## I. BACKGROUND

On December 8, 2025, Plaintiff, proceeding *pro se*, filed his Complaint in this action. (Dkt. 1). Plaintiff alleges that he was hired in November 2023 by Lawrence Ward, Chief Executive Officer of Market Rithm, Inc. ("Market Rithm"), to work in the San Marcos, Texas office on "producing instructional videos for Market Rithm, Inc.'s proprietary software, StructureCMS and Deployer, under the banner of Rithm University." (*Id.* at 2). Immediately after commencing his employment, Plaintiff alleges that he "learned that his payroll employer was Political Media, Inc. ('PMI'), not Market Rithm" and that he would be splitting his time between being the "primary creative and instructional designer for Rithm University" (approximately 75% of his time) and being "a copy-paste operator for PMI's political newsletter machine" (approximately 25% of his time). (*Id.*).

---

[1] Defendants in this case are Constitutional Rights PAC, Market Rithm, Inc., Christian Morano, Emerald Nguyen, Political Media, Inc., Will Rader, Trump Victory PAC, and Lawrence Ward. Defendants filed their Motion to Dismiss collectively and, as such, will be referred to as "Defendants" throughout this order.

Plaintiff claims that unbeknownst to him at the time, neither PMI nor Market Rithm were registered to do business in Texas. (*Id.* at 2–3). Plaintiff lays out various allegations against employees of these companies—including that one employee installed monitoring software on his computer without his authorization which resulted in "banking irregularities, attempted account breaches, and identity-theft activity"; that Plaintiff was subjected to daily racial hostility and physical intimidation directed at him, the only Black employee; and that he was retaliated against by a certain employees. (*Id.* at 3–10). Plaintiff contends that on December 1, 2025, he was terminated because "PMI needed to cut costs," according to Ward. (*Id.* at 10). In sum, Plaintiff alleges that "his firing was the final act of a two-year arc in which [he], while producing high quality work and sustaining a 75% Rithm University workload, had been subjected to racial humiliation, physical threats, retaliatory discipline, invasive surveillance, coerced participation in unlawful PAC operations, and deliberate sabotage of his professional and personal brand." (*Id.*).

Based on these allegations, Plaintiff asserts several causes of action—federal claims under 42 U.S.C. § 1981[2] for race discrimination, retaliation, and hostile work environment; 18 U.S.C. § 1030[3] (the Computer Fraud and Abuse Act), and 15 U.S.C. §§ 1114 and 1125(a) (the Lanham Act); and state law claims of intrusion upon seclusion[4]; intentional infliction of emotional distress[5]; civil assault[6]; unjust enrichment[7]; civil conspiracy[8]; alter ego / piercing the corporate veil[9]; negligence per se[10]; gross negligence / malice[11]; and false imprisonment[12]. Plaintiff seeks injunctive relief,

---

[2] Plaintiff brings these claims against all Defendants. (Compl., Dkt. 1, at 56–57).
[3] Plaintiff brings this claim against Nguyen and PMI. (*Id.* at 57–58).
[4] Plaintiff brings this claim against Ward, Nguyen, Rader, Morano, and PMI. (*Id.* at 58).
[5] Plaintiff purports to bring this claim against all individual defendants and the corporate defendants via *respondeat superior*. (*Id.*).
[6] Plaintiff brings this claim against Rader and PMI. (*Id.* at 59).
[7] Plaintiff brings this claim against Constitutional Rights PAC, Trump Victory PAC, and Ward. (*Id.*).
[8] Plaintiff brings this claim against all Defendants. (*Id.*).
[9] Plaintiff brings this claim against Ward. (*Id.* at 60).
[10] Plaintiff brings this claim against Nguyen and PMI. (*Id.*).
[11] Plaintiff brings this claim against all Defendants. (*Id.* at 61).
[12] Plaintiff brings this claim against Nguyen and PMI. (*Id.*).

compensatory damages, and $400 million in punitive damages. (*Id.* at 62–66). Defendants filed a motion to dismiss each of the claims against them under Federal Rules of Civil Procedure 12(b)(2) and (b)(6). (Mot. Dismiss, Dkt. 14).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.*

But when, as here, the Court rules on the motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.* Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### B. Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a

3

complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

4

### III. DISCUSSION

### A. Jurisdictional Defendants' Rule 12(b)(2) Arguments

Defendants Ward, Morano, Constitutional Rights PAC ("CRPAC"), Trump Victory PAC, and Market Rithm (collectively, the "Jurisdictional Defendants") argue that they are not subject to personal jurisdiction because they "are not domiciled in Texas and have no purposeful contacts with Texas sufficient for purposes [of] personal jurisdiction." (Mot. Dismiss, Dkt. 14, at 2). The Jurisdictional Defendants assert the following:

(a) Ward is the President and CEO of PMI and a resident of Virginia. "His only alleged contacts with Texas consist of remote communications with Texas-based employees."
(b) Morano is a PMI employee and a Florida resident. "Like Ward, he also does not live or work in Texas, and his only alleged connection to Texas consist of remote communications—such as phone calls, emails, and virtual meetings—with employees who happened to work in PMI's Texas office."
(c) CRPAC is a Virginia-based political committee that "maintains no Texas offices, employees, or agents."
(d) Trump Victory PAC is "merely a brand associated with CRPAC and not even a legal entity."
(e) Market Rithm is a Delaware corporation with its principal place of business located in Virginia. "It has no offices, employees, or specific business operations in Texas."

(*Id.* at 2–3).

Because the Jurisdictional Defendants are not Texas residents, Plaintiff has the burden of establishing a *prima facie* case for this Court's personal jurisdiction over them. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). Because Texas's long-arm statute extends as far as constitutional due process allows, the two-step inquiry "collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

5

Exercising personal jurisdiction over a nonresident defendant is compatible with due process when "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel*, 517 F.3d at 243 (citation modified). There are two types of minimum contacts: those that give rise to general personal jurisdiction and those that give rise to specific personal jurisdiction. *Lewis*, 252 F.3d at 358.

### 1. General Jurisdiction

The Court addresses general jurisdiction first. Beginning with the individual defendants, general jurisdiction exists only where a defendant's contacts with the forum state are so continuous and systematic as to render the defendant "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924. Ward and Morano are residents of Virgina and Florida, respectively. (Declaration of Ward, Dkt. 14-1, at 2; Declaration of Morano, Dkt. 14-2, at 2). Accordingly, neither are subject to general jurisdiction in Texas.

For the corporate defendants—CRPAC and Market Rithm[13]—general jurisdiction applies "where a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on a cause of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation modified); *see also Frank v. PNK (Lake Charles)*, 947 F.3d 331, 339 (5th Cir. 2020). "General jurisdiction exists over a non-resident corporation when its 'affiliations with the State are so 'continuous and systematic' as to

---

[13] Because Trump Victory PAC is not a legal entity—rather, it is "merely a brand associated with CRPAC," (Mot. Dismiss, Dkt. 14, at 6)—it lacks the legal capacity to sue or be sued, so Plaintiff cannot state a plausible claim for relief against it. *See* Fed. R. Civ. P. 17(b). *See also Doe v. Bonath*, 705 F. Supp. 3d 690, 704 (W.D. Tex. 2023) ("A plaintiff cannot bring an action against an entity that does not have the capacity to sue or be sued.").

render [it] essentially at home in the forum State." *Frank*, 947 F.3d at 336 (quoting *Goodyear*, 564 U.S. at 919). "There are two 'paradigm' forums in which a corporate defendant is 'at home' ... (1) the corporation's place of incorporation and (2) its principal place of business." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (citations omitted). "[I]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id.*

CRPAC is a political committee based in Virginia and has no offices, employees, or agents in Texas. (Ward Decl., Dkt. 14-1, at 3). CRPAC did not employ Plaintiff and has "no independent Texas contacts." (*Id.*). For corporations such as Market Rithm, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (citation modified). Market Rithm is a Delaware corporation with its principal place of business located in Virginia. (Ward Decl., Dkt. 14-1, at 3). Market Rithm "does not own or operate any offices in Texas" and "has no employees or specific business operations in Texas." (*Id.*). Accordingly, the Court finds that it lacks general jurisdiction over CRPAC and Market Rithm.

### 2. Specific Jurisdiction

Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*, 517 F.3d at 243. Conduct unrelated to a plaintiff's claims is irrelevant to the exercise of specific personal jurisdiction. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006) (stating that the Due Process Clause bars the exercise of specific jurisdiction over claims that do not arise out of the defendant's forum contacts); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 530 (5th Cir. 2002) (stating that personal jurisdiction exists only if a cause of action arises from or relates to the defendant's conduct "in or vis-à-vis the forum"). The touchstone of the specific jurisdiction analysis is "whether the defendant's conduct shows that it reasonably anticipates

being haled into court." *McFadin*, 587 F.3d at 759 (citation modified). Even a single contact can support specific jurisdiction if it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). That said, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Sangha*, 882 F.3d at 103. Due process requires that specific jurisdiction be based on more than the "random, fortuitous, or attenuated" contacts a defendant makes by interacting with people affiliated with the forum state. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The plaintiff thus "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.

### i. Individual Defendants

Starting with the individual defendants, Plaintiff alleges that Ward "directed and orchestrated the conduct giving rise to this lawsuit while operating businesses headquartered in Virginia that maintained continuous operations in San Marcos, Texas, within this District." (Compl., Dkt. 1, at 15). Similarly, Plaintiff alleges that Morano is a resident of Florida who "performed the acts complained of [in Plaintiff's Complaint] while working in San Marcos, Texas, within this District." (*Id.*). Under Texas law, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation"—a concept often referred to as the "fiduciary-shield doctrine." *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985). "However, the protections of the fiduciary-shield doctrine are not absolute. For example, it does not preclude personal jurisdiction if an officer, while doing business on behalf of a corporation, committed a tort in Texas." *Donzi N.V. v. Glob. Fin. Servs. LLC*, No. CIV.A. H-11-3642, 2012 WL 2403504, at *4 (S.D. Tex. June 25, 2012).[14]

---

[14] *See also Donovan v. Grim Hotel Co.,* 747 F.2d 966, 974 (5th Cir. 1984) ("Nor is due process offended when a nonresident corporate agent or employee is made subject to personal jurisdiction in the forum state for a foreseeable consequence therein of his personal act performed elsewhere, although allegedly performed only

Additionally, in the Fifth Circuit, "specific personal jurisdiction is a claim-specific inquiry; a plaintiff bringing multiple claims that arise out of different forum contacts must establish specific jurisdiction for each claim." *Windecker v. Hang Wei*, No. 1:18-CV-00898-LY, 2020 WL 4194017, at *2 (W.D. Tex. July 21, 2020), *report and recommendation adopted*, No. 1:18-CV-898-LY, 2020 WL 10065756 (W.D. Tex. Aug. 7, 2020) (citing *McFadin*, 587 F.3d at 759). "Due process requires that specific jurisdiction be based on more than the 'random, fortuitous, or attenuated' contacts a defendant makes by interacting with people affiliated with the forum state." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). The plaintiff "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285.

Accordingly, although PMI conceded jurisdiction, (Reply, Dkt. 19, at 2), Ward, PMI's CEO, and Morano, an employee of PMI, are not then necessarily subject to the specific personal jurisdiction of this Court. Rather, because specific personal jurisdiction is a "claim-specific injury," *McFadin*, 587 F.3d at 759, the relevant conduct is that which is related to Plaintiff's claims against Ward and Morano for race discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981; intrusion upon seclusion; intentional infliction of emotional distress; unjust enrichment (Ward only); civil conspiracy; alter ego / piercing the corporate veil (Ward only); and gross negligence / malice. (Compl., Dkt. 1, at 56–61). As detailed below, the Court has concluded that Plaintiff failed to state actionable claims for relief against Ward or Morano for any of the above referenced causes of action and therefore will dismiss those claims under Federal Rule of Civil

---

as a corporate functionary."); *Morris v. Khols–York,* 164 S.W.3d 686, 697 (Tex. App.-Austin 2005, no pet.) ("The fiduciary shield doctrine does not protect a corporate employee from the exercise of specific jurisdiction as to fraudulent activities or torts for which the employee may be held individually liable . . . There is no blanket protection from jurisdiction simply because a defendant's alleged acts were done in a corporate capacity.").

Procedure 12(b)(6). Accordingly, the Court need not make a further determination as to the specific personal jurisdiction of Ward or Morano.

### ii. Corporate Defendants

Turning to the corporate defendants, Plaintiff alleges that CRPAC "conducted political fundraising operations, maintained websites, and directed employee labor" in San Marcos, Texas. (Compl., Dkt. 1, at 15). CRPAC contends that Plaintiff's conclusory assertions against it are insufficient to establish personal jurisdiction because "CRPAC's only alleged connection to Texas is that PMI employees [in Texas] allegedly performed work that benefited CRPAC." (Mot. Dismiss, Dkt. 14, at 6) (citing Compl., Dkt. 1, at 12)). CRPAC further argues that the "activities of a separate entity's employees in the forum cannot be imputed to CRPAC for jurisdictional purposes" and any payments CRPAC made to PMI for services do not establish purposeful availment. (*Id.* at 6–7 (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) and *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)).

Plaintiff alleges that Market Rithm "operated offices, employed staff, and conducted daily business operations in San Marcos, Texas." (Compl., Dkt. 1, at 15). Market Rithm, however, asserts that Plaintiff "fails to identify a single Market Rithm office, employee, or business operation in Texas anywhere in his sixty-seven-page Complaint, let alone identify any actual contacts that Market Rithm purposefully directed at Texas." (Mot. Dismiss, Dkt. 14, at 7). And, Market Rithm claims that the contacts of PMI cannot be imputed to Market Rithm. (*Id.* (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)).

As a general rule, personal jurisdiction over a nonresident corporation may not be based solely on the contacts with the forum state of another affiliated corporate entity with which the defendant may be affiliated. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004). Consequently, while Plaintiff suggests that Ward's role as the founder of CRPAC and owner

of Market Rithm imputes PMI's Texas contacts to those entities, (Resp., Dkt. 17, at 7–8), the Court

finds that PMI's Texas contacts do not support the exercise of personal jurisdiction over CRPAC or

Market Rithm according to Fifth Circuit precedent. *See, e.g.*, *Dickson Marine Inc. v. Panalpina, Inc.*, 179

F.3d 331, 338 (5th Cir. 1999).

Further, CRPAC is a Virginia-based political committee with no offices, employees, or

agents in Texas.[15] (Ward Decl., Dkt. 14-1, at 3). CRPAC did not employ Plaintiff nor have any

contractual relationship with him, nor did CRPAC direct, supervise, or control any of PMI's

employees. (*Id.*). Plaintiff offers no allegations showing that CRPAC purposefully directed any

activities toward Texas,[16] and the facts that Plaintiff and other PMI employees performed work

benefiting CRPAC or that CRPAC may have made payments to PMI, (*see* Compl., Dkt. 1, at 12), do

not establish purposeful availment. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.

1986).

Similarly, Market Rithm is a Delaware corporation with its principal place of business in

Virginia; it does not own or operate any offices in Texas; it has no employees or specific business

operations in Texas; and it did not employ Plaintiff or have any contractual relationship with him.[17]

(Ward Decl., Dkt. 14-1, at 3). And, once again, Plaintiff offers no allegations showing that Market

Rithm purposefully directed any activities toward Texas, and the facts that Plaintiff and other PMI

---

[15] Plaintiff alleges that CRPAC is operating in Texas without Texas registration. (Compl., Dkt. 1, at 20).
However, Ward, the founder of CRPAC, submitted a sworn declaration attesting that CRPAC is a Virginia-
based political committee with no offices, employees, or agents in Texas. (Ward Decl., Dkt. 14-1, at 3).
"Based upon these sworn attestations, the court need not accept the allegations in the Complaint as true for
the purpose of determining whether it holds specific personal jurisdiction." *Ortega v. Stern Rock Cap. LLC*, No.
SA-25-CV-00790-JKP, 2026 WL 396550, at *3 (W.D. Tex. Feb. 11, 2026).
[16] Indeed, Plaintiff agrees that he was "never classified as a CRPAC employee" and "was never paid for PAC-
directed work." (Compl., Dkt. 1, at 12).
[17] Plaintiff alleges that Market Rithm is "operating in San Marcos, Texas without registration to do business in
Texas." (Compl., Dkt. 1, at 18). However, Ward, the owner of Market Rithm, submitted a sworn declaration
attesting that Market Rithm is a Delaware corporation with its principal place of business in Virginia and that
it does not own or operate any offices in Texas. (Ward Decl., Dkt. 14-1, at 3). "Based upon these sworn
attestations, the court need not accept the allegations in the Complaint as true for the purpose of determining
whether it holds specific personal jurisdiction." *Ortega*, 2026 WL 396550, at *3.

employees performed work benefiting Market Rithm or that Market Rithm may have made payments to PMI do not establish purposeful availment. *See Holt Oil*, 801 F.2d at 778.

Because Plaintiff failed to provide any evidence to support the Court's exercise of specific personal jurisdiction over CRPAC or Market Rithm in his Complaint, (Dkt. 1), or in his Response to Defendants' Motion to Dismiss, (Dkt. 17), Plaintiff fails to meet his burden to establish specific personal jurisdiction over either corporate defendant. Accordingly, the Court will dismiss CRPAC and Market Rithm as defendants under Federal Rule of Civil Procedure 12(b)(2).

## B. Defendants' Rule 12(b)(6) Arguments

Defendants move to dismiss each of Plaintiff's thirteen asserted claims for relief under Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, Dkt. 14, at 8). At the outset, the Court notes that it only considers Plaintiffs' claims against those Defendants that the Court is not dismissing under Federal Rule of Civil Procedure 12(b)(2)—PMI, Nguyen, and Rader.

### 1. Section 1981 Claims

Plaintiff asserts three claims against PMI[18] for discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981. (Compl., Dkt. 1, at 56–57).

### i. Race Discrimination

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and

---

[18] "Section 1981 does not supply a general cause of action for race discrimination;" rather, "[i]t bars race discrimination *in contracting*." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021) (citing *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (emphasis in original)). Accordingly, to establish liability under § 1981, an employee must demonstrate the existence of an employment relationship with a defendant. *Hernandez v. Ho'olaulima Gov't Sols., LLC*, No. EP-23-CV-439-KC, 2024 WL 3648280, at *3 (W.D. Tex. Aug. 2, 2024) (citing *Perry*, 990 F.3d at 926). Accordingly, to the extent Plaintiff intended to bring his § 1981 claims against the individual Defendants in this matter, those claims would not be properly before the Court because Plaintiff does not plead individual employment relationships between himself and the individual Defendants.

termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). "To establish a § 1981 claim for contractual discrimination, Plaintiffs must allege that (1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). The analysis of discrimination claims under § 1981 is identical to that of Title VII claims. *Id.* (citing *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)).

Here, Plaintiff alleges that PMI "intentionally discriminated against [him] because of his race and African origin," and provides examples of such alleged discrimination. (Compl., Dkt. 1, at 56). While Defendants attempt to cast Plaintiff's allegations as relating to his African *origin*—which Defendants assert cannot constitute a proper § 1981 claim, (Mot. Dismiss, Dkt. 14, at 8–9), the Court finds that Plaintiff makes clear these instances of alleged discrimination pertained to both his race as an African individual *and* his African origin. For example, Plaintiff alleges that "[r]epeated racial slurs and epithets [were] openly used in the workplace, including casual and unrestrained use of the n-word" and "[p]laying videos mocking the humiliation of Black citizens for employee entertainment." (Compl., Dkt. 1, at 56). Accordingly, Plaintiff adequately establishes the first element of a § 1981 claim for race discrimination. The Court, however, does agree with Defendants that Plaintiff cannot state a claim for which relief can be granted under § 1981 for national origin. *See Udoewa v. Plus4 Credit Union*, 457 Fed. Appx. 391, 392 (5th Cir. 2012).

Next, Plaintiff alleges that PMI "impos[ed] terms and conditions of employment not imposed on non-Black employees, including heightened scrutiny, surveillance, and humiliation." (Compl., Dkt. 1, at 56). More specifically, Plaintiff alleges he "was singled out as the only Black employee and targeted for demeaning, racially charged comments that no other employee endured."

13

(*Id.* at 28). The Fifth Circuit has held that while "naked allegations of discriminatory intent are too conclusory to survive a motion to dismiss," "an allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Body by Cook*, 869 F.3d at 386 (citations and quotations omitted). Because Plaintiff proceeds *pro se*, the Court will construe the Complaint liberally and, doing so, finds that Plaintiff adequately pleads the second prong of a § 1981 race discrimination claim at this stage. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Finally, the Court considers whether the alleged "discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook*, 869 F.3d at 386. Defendants argue that Plaintiff's § 1981 claim fails as a matter of law because he does not identify the impaired contractual relationship under which he has rights necessary to plead a proper § 1981 race discrimination claim. (Mot. Dismiss, Dkt. 14, at 9–10). "Any claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). Again, construing Plaintiff's Complaint liberally, the Court finds that Plaintiff adequately pleads his employment relationship with PMI, which is a contractual relationship, and therefore, Plaintiff may bring his § 1981 race discrimination claim against PMI. (*See* Compl., Dkt. 1, at 2, 18). Accordingly, Plaintiff's § 1981 race discrimination claim against PMI may proceed.

### ii. Retaliation

"The elements of a § 1981 retaliation claim are (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action." *Body by Cook*, 869 F.3d at 390. "Opposing any practice made unlawful by Title VII which involves discrimination based on race is protected activity under § 1981." *Hernandez v. Ho'olaulima Gov't Sols., LLC*, No. EP-23-CV-439-KC, 2024 WL 3648280, at *11

14

(W.D. Tex. Aug. 2, 2024) (citing *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a))).

Plaintiff alleges that he "engaged in protected activity by opposing discriminatory conduct, objecting to humiliating directives, and setting boundaries after abusive incidents involving supervisors." (Compl., Dkt. 1, at 57). Plaintiff claims that after he engaged in this protected activity, "Defendants took materially adverse actions including intensified surveillance, deliberate work sabotage, public criticism, pretextual performance scrutiny, approval bottlenecks, loss of autonomy, and termination on December 1, 2025." (*Id.*). Plaintiff pleads "[a] causal connection exists between Plaintiff's protected activity and Defendants' adverse actions." (*Id.*).

Defendants counter that Plaintiff's allegation as to protected activity is too vague and lacks any reference to an unlawful employment practice to constitute protected activity. (Mot. Dismiss, Dkt. 14, at 11). Upon reviewing both Plaintiff's allegation quoted above as well as the entirety of Plaintiff's Complaint, the Court finds that Plaintiff indeed does not properly plead that he engaged in activities protected by § 1981. As described above, Plaintiff does plead instances of alleged racial discrimination, but to engage in activities protected by § 1981, Plaintiff would have to allege specific instances in which he opposed or reported that racially discriminatory conduct. *See, e.g.*, *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); *Moore v. United Parcel Serv., Inc.,* 150 Fed. Appx. 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice."). The closest Plaintiff gets to doing so is in arguing that he "opposed racial discrimination by setting professional boundaries with Rader" after Rader allegedly made a racially derogatory comment to Plaintiff. (Resp., Dkt. 17, at 13). But, the paragraphs of Plaintiff's Complaint he references to substantiate that argument do not include any allegations of

Plaintiff opposing Rader's alleged conduct to either Rader or anyone else. Consequently, the Court finds that Plaintiff's § 1981 claim for retaliation against PMI must be dismissed.

### iii. Hostile Work Environment

"To establish a claim of hostile work environment, a plaintiff must prove he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take  prompt remedial action." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Plaintiff sufficiently pleads the first three elements of his claim: he is Black and he alleges he was subjected to unwelcome harassment that was based on his race.

"For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993) (quotations omitted). "To determine whether the [alleged harassment] was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* (citing *Harris*, 510 U.S. at 23). No single factor is determinative in this inquiry. *Id.* (citing *Harris*, 510 U.S. at 22).

Plaintiff summarizes his various allegations pertaining to a hostile work environment throughout his Complaint as "racial slurs, intimidation, accent mockery, humiliation rituals, forced political caricature, and data intrusions" and contends they were "severe or pervasive enough to create a racially abusive environment." (Compl., Dkt. 1, at 7). At this stage, the Court finds that

Plaintiff sufficiently pleads that a reasonable person would find the environment Plaintiff describes as offensive, and Plaintiff makes clear throughout his Complaint that he himself perceived the environment at PMI to be offensive and abusive. Just as examples, Plaintiff alleges that "PMI's San Marcos office environment was permeated by daily use of the racial epithet [the n-word], anti-Black remarks, slurs directed at African Americans, and explicit mockery of African cultures and accents"; that Rader told Plaintiff "he 'smelled like shit' because of his African origin"; and that Plaintiff was "subjected to mocking of his accent, his manner of speech, and his Zimbabwean heritage." (Compl., Dkt. 1, at 26, 28).

Finally, an "employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem." *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999) (citation omitted). "The plaintiff bears the burden of showing that his employer failed to take effective action." *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999). Plaintiff alleges that Ward himself—the President and CEO of PMI, who must therefore have had the power to take action to remedy any problems at the company— contributed to part of the alleged hostile work environment, specifically the "mocking" of Plaintiff's accent and manner of speech. (Compl., Dkt. 1, at 28). And, Plaintiff contends that when Plaintiff raised concerns about Ward causing "profound workplace stress," Nguyen's "tone made clear that the enterprise's operational culture-including micromanagement, hostility, and coercion-originated from Ward and flowed downward without resistance." (*Id.* at 30). Accordingly, Plaintiff's allegations are sufficient to meet all five prongs of a hostile work environment claim against PMI under § 1981 at the motion to dismiss stage.

### 2. Computer Fraud and Abuse Act Claim

Plaintiff brings this claim against Nguyen and PMI. (Compl., Dkt. 1, at 57–58). Plaintiff alleges that "Nguyen intentionally accessed Plaintiff's workstation and Google Chrome browser

profile without authorization, or exceeded authorized access, when she installed an image-altering Google Chrome extension on his logged-in profile containing synced financial, email, and identity credentials." (*Id.*). Further, Plaintiff claims this conduct caused "loss" "within the meaning of § 1030(e)(11) exceeding $5,000, including identity-theft remediation, fraudulent withdrawals, compromised accounts, and related investigative expenses." (*Id.* at 58). Plaintiff alleges "PMI is vicariously liable for Nguyen's conduct committed within the scope of employment." (*Id.*). Defendants purport that a CFAA claim "requires proof that the defendant accessed a computer 'without authorization or by exceeding authorized access'" and suggest that Plaintiff alleges "*only* that Nguyen installed a browser extension on a company workstation." (Mot. Dismiss, Dkt. 14, at 13–14 (citing 18 U.S.C. § 1030(g)) (emphasis added).

"The CFAA is a criminal statute that provides a civil cause of action to recover damages for violations causing an aggregate of $5,000 in losses[19] over a one-year period." *Broadleaf IT, LLC v. Walley*, No. 4:24-CV-00303, 2024 WL 4329145, at *7 (S.D. Tex. Aug. 17, 2024), *report and recommendation adopted*, No. 4:24-CV-00303, 2025 WL 45626 (S.D. Tex. Jan. 8, 2025) (citing 18 U.S.C. § 1030(c)(4)(a)(i)(I), (g)). The CFAA prohibits anyone from "intentionally access[ing] a computer without authorization or exceed[ing] authorized access," and thereby obtaining "information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). "An individual exceeds authorized access when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren v. United States*, 593 U.S. 374, 396 (2021) (quotations omitted). Section 1030(g) provides the basis for a civil private cause of action under the CFAA. *Id.* at 379. "To succeed on a CFAA claim, Plaintiffs not only must establish the elements of a particular substantive offense and show that they suffered

---

[19] The term "loss" is defined as "any reasonable cost to any victim," including "any revenue lost." 18 U.S.C. § 1030(e)(11).

damage or loss due to th[e] offense, but they also must establish one of the five types of conduct specified under subsection (c)(4)(A)(i)." *Cantu v. Guerra*, No. SA-20-CV-0746-JKP, 2023 WL 5217852, at *13 (W.D. Tex. Aug. 11, 2023) (citation and quotations omitted).

The Court assumes Plaintiff seeks to bring his CFAA claim under § 1030(a)(5)(C), which prohibits a person from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." To plausibly allege a claim under this provision, Plaintiff must allege that Nguyen (1) intentionally accessed, (2) a protected computer without authorization, (3) and as a result of such conduct, caused loss in the aggregate of $5,000 over a one year period. 18 U.S.C. § 1030(a)(5)(C). The CFAA defines "protected computer" as "a computer . . . which is used in or affecting interstate or foreign commerce or communication." *Id.* § 1030(e)(2)(B). Plaintiff asserts that Nguyen's authorization to use the company workstation—as an agent of PMI—"did not extend to accessing and modifying Plaintiff's personal Google Account and personal financial credentials." (Resp., Dkt. 17, at 15).

While the Court is skeptical of whether the CFAA mandates that interfering with *personal* activities undertaken on a protected computer would constitute intentionally accessing a protected computer without authorization, the Court finds that, at this stage, Plaintiff has sufficiently alleged facts to survive the motion to dismiss stage on his CFAA claim. Plaintiff alleges that Nguyen intentionally accessed his protected computer without authorization; within weeks following this incident, "[h]is bank accounts were compromised, funds were removed without authorization, and fraudulent credit activity appeared in his name;" and as a result, he suffered from loss exceeding $5,000 for "identity-theft remediation, fraudulent withdrawals, compromised accounts, and related investigative expenses." (Compl., Dkt. 1, at 40–42).

The issue of whether the CFAA allows for claims of vicarious liability has been addressed only by a few courts. *See, e.g., Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *6

(N.D. Ill. Sept. 27, 2005); *Doe v. Dartmouth-Hitchcock Med. Ctr.*, No. CIV. 00-100-M, 2001 WL 873063, at *5–6 (D.N.H. July 19, 2001). These courts begin their analysis by looking to the language of the CFAA. At the outset, these courts have clarified that a court may assume that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley,* 537 U.S. 280, 285 (2003) (applying common law principle of vicarious liability to Fair Housing Act claim notwithstanding the fact that the statute "says nothing about vicarious liability" because "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment"). "Any presumption of vicarious liability, however, cannot apply when doing so would conflict with clear congressional intent." *See Carter*, 2005 WL 2369815 at *5.

"By providing compensation to victims of computer fraud, the CFAA operates, in effect, like a tort action." *Id.* at *6. Consequently, the Court assumes that Congress intended the CFAA to permit vicarious liability. "Employers are vicariously liable for the torts of employees that are 'committed in the course and scope of their employment.'" *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 273 (5th Cir. 2012) (citing *Medina v. Herrera,* 927 S.W.2d 597, 601 (Tex. 1996); Restatement (Third) of Agency § 7.07(1)). "An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." Restatement (Third) of Agency § 7.07(2). Without knowing yet the full circumstances surrounding this alleged incident, the Court cannot ascertain whether Nguyen acted in a manner considered in the course and scope of her employment.[20] As such, Plaintiff's CFAA claim may also proceed at this stage against PMI.

---

[20] *See Dartmouth-Hitchcock*, 2001 WL 873063 at *5 (finding that employers could not be held vicariously liable for an employee's intentional violation of the CFAA, "when that violation necessarily involved included an intentional violation of the [employers'] own policies—and actually victimized the [employers]" because

### 3. Intrusion Upon Seclusion Claim

Plaintiff brings this claim against Nguyen, Rader, and PMI. (Compl., Dkt. 1, at 58). "To state a *prima facie* claim for invasion of privacy in the form of intrusion upon seclusion, [Plaintiff] must plead facts showing: (1) an intentional intrusion; (2) upon [his] seclusion, solitude, or private affairs; (3) that would be highly offensive to a reasonable person." *Doe v. Siddiqui*, No. 3:17-CV-01869-N, 2018 WL 3956292, at *3 (N.D. Tex. Aug. 17, 2018). An actionable intrusion "typically involves some sort of *physical* invasion of a person's property," such as "spying, opening private mail, wire-tapping, or entering a person's residence," and "is thus conceptually a quasi-trespass tort." *Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000) (emphasis in original). "But in certain circumstances, a plaintiff may assert a claim for invasion of privacy by intrusion upon seclusion even in the absence of eavesdropping or physical intrusion on another's property." *Siddiqui*, 2018 WL 3956292, at *3.

Plaintiff alleges that Defendants "intentionally intruded on Plaintiff's private affairs in a manner highly offensive to a reasonable person by:"

> (a) Installing unauthorized software on his personal browser profile; (b) Reviewing private Viber communications with Ward; (c) Demanding access to Plaintiff's personal phone to inspect messages; (d) Conducting sustained, unjustified workstation surveillance; (e) Forcing Plaintiff into demeaning, physically confining posture during prolonged nit-picking sessions.

(Compl., Dkt. 1, at 58). Defendants argue that these alleged intrusions "occurred in the workplace and concern workplace conduct" and because "[e]mployees have a diminished expectation of privacy in the workplace," "employer monitoring of work activities does not constitute intrusion upon seclusion." (Mot. Dismiss, Dkt. 14, at 14 (first citing *Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724, 757 (Tex. App.—Houston [1st Dist.] 2025, pet. filed) (holding that "there exist[ed] no expectation of privacy as a matter of law for an employee

---

doing so "would hardly be consistent with, or further the purpose of, the CFAA, which, after all, is intended to protect computer systems like [the employers'] from unauthorized access and concomitant damage."

communicating using his employer's email and other systems"); and then citing *McLaren v. Microsoft Corp.*, 1999 WL 339015 (Tex. App.—Dallas May 28, 1999, no pet.) (holding that employer's access to former employee's email account on employer's server was not an intrusion)). Further, Defendants contend that "[r]emote participation in workplace supervision does not constitute intrusion under Texas law." (*Id.* at 15 (citing *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997) (holding that plaintiff's allegations of offensive comments and inappropriate advances "would not be cognizable as a cause of action for invasion of privacy under Texas law")) (quotations omitted).

The Court finds that only Nguyen's alleged unauthorized review of Plaintiff's private Viber communications with Ward constitutes a sufficient claim for intrusion upon seclusion at this juncture. (*See* Compl., Dkt. 1, at 58, ¶ 371 (b) and (c)). The other bases of Plaintiff's claim do not include sufficient facts demonstrating those incidents can be construed as "highly offensive to a reasonable person," including because they occurred in the workplace and monitored his work activities. *See Siddiqui*, 2018 WL 3956292, at *3. *See also Escamilla v. United States*, No. EP-14-CV-00246-FM, 2015 WL 12734050, at *7 (W.D. Tex. Jan. 29, 2015). Accordingly, Plaintiff's intrusion upon seclusion claim may proceed against Nguyen only related to the incident of Nguyen allegedly reviewing Plaintiff's private Viber communications without authorization.

### 4. Intentional Infliction of Emotional Distress Claim

Plaintiff brings this claim against all individual defendants and the corporate defendants via *respondeat superior.* (Compl., Dkt. 1, at 58–59). "To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffman–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004). "Extreme and outrageous conduct" is defined as

conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and quotations omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* "[I]nsensitive or even rude behavior does not constitute extreme and outrageous conduct." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)

Plaintiff alleges that "Defendants' conduct—including racial degradation, accent mockery, humiliation, forced political caricature, unauthorized computer access, and retaliatory discipline— was extreme and outrageous and exceeded all bounds tolerated in a civilized society." (Compl., Dkt. 1, at 58). In response, Defendants counter that "Plaintiff bases his [intentional infliction of emotional distress] claim on the same exact factual allegations as his Section 1981, CFAA, and intrusion claims." (Mot. Dismiss, Dkt. 14, at 15). Defendants also assert that "[p]erformance criticism, workplace surveillance, approval delays, and being asked about work on the day of a family death describe ordinary (even if insensitive) workplace friction," rather than the extreme and outrageous conduct necessary for this claim. (Reply, Dkt. 19, at 7).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). Here, the Court finds Plaintiff has only alleged a "formulaic recitation" of the elements of a claim of intentional infliction of emotional distress. "Extreme and outrageous conduct" is a high standard, and Plaintiff has not alleged facts to raise a right to relief from this kind of claim above the speculative level. *Id.* Rather, while the Court is sympathetic to Plaintiff's emotional distress due to the incidents he describes, the Court finds that those allegations do not rise to the level of extreme and outrageous conduct, and rise to the level of insulting, insensitive, or rude behavior that cannot constitute intentional infliction of emotional

23

distress. Accordingly, the Court finds that Plaintiff has failed to state a claim for intentional infliction of emotional distress against any defendant.

### 5. Civil Assault

Plaintiff brings this claim against Rader and PMI, vicariously. (Compl., Dkt. 1, at 59). "The elements of a civil assault mirror those of a criminal assault" which "occurs if a person:"

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). Plaintiff alleges that "Rader intentionally placed [him] in apprehension of imminent bodily harm by standing over him, shouting aggressively, and ordering him out of a shared space in a threatening manner." (Compl., Dkt. 1, at 59). Defendants contend that "there is no allegation in Plaintiff's Complaint that Rader made a physical threat or engaged in any other conduct that would cause a reasonable person to apprehend imminent physical contact." (Mot. Dismiss, Dkt. 14, at 16). In his Response, however, Plaintiff points to the section of his Complaint where he alleges Rader's confrontation was "hostile and bordered on violence" and that another Black employee "intervened to de-escalate the situation and prevent it from becoming physical." (Resp., Dkt. 17, at 16 (citing Compl., Dkt. 1, at 4)).

The Court finds Plaintiff's allegations sufficient to suggest that Plaintiff was reasonably fearful that Rader was about to hurt him. *See Quinonez v. Perez*, 712 F. Supp. 3d 879, 886 (W.D. Tex. 2024) ("[A]ssault by threat requires fear of imminent bodily injury, rather than actual bodily injury. This offense is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause. It is thus a nature of conduct offense, not a result of conduct offense. A defendant may communicate a threat by action or conduct.") (citations and quotations omitted). Accordingly, Plaintiff's civil assault claim against Rader may proceed at this stage.

24

"As a general rule in Texas, an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 493 (Tex.App.—Fort Worth 2002, no pet.). *See also Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex. App. 2002) ("[A]ssault is usually the expression of personal animosity and is not for purposes of carrying out the employer's business.") Plaintiff does not allege that Rader's actions were within the course and scope of Rader's authority or employment; accordingly; PMI may not be held vicariously liable for Rader's conduct.

### 6. Unjust Enrichment

Plaintiff brings this claim against CRPAC, Trump Victory PAC, and Ward. (Compl., Dkt. 1, at 59). Because the Court has found that CRPAC and Trump Victory PAC ("the PAC Defendants") must be dismissed as defendants, the Court will not consider the parties' Rule 12(b)(6) arguments as to this claim against those parties. As to Ward, the Court finds that Plaintiff has not stated a viable claim for unjust enrichment.

Plaintiff asserts an unjust enrichment claim against Ward (as well as the dismissed PAC Defendants) because he contends they "received the benefit of Plaintiff's PAC-directed labor" and were "unjustly enriched at [his] expense." (Compl., Dkt. 1, at 59). "Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Here, the Court concludes that Plaintiff has not made allegations that raise a right to relief above the speculative level that Ward secured a benefit from Plaintiff by fraud, duress, or the taking of an undue advantage. *See id.* Plaintiff's vague allegations that Ward and his

company, PMI, were "shifting all compensation through PMI to evade proper reporting and the costs associated with PAC operations" do not provide a plausible inference that unjust enrichment occurred here. (Compl., Dkt. 1, at 59). And, given that Plaintiff pleads that he was paid by PMI for his work, (*see e.g.*, Compl., Dkt. 1, at 54), Ward's supposed benefit was not to Plaintiff's detriment, since he was compensated for his "PAC-directed labor," (*id.* at 59). *See Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-CV-1028-D, 2016 WL 7378937, at *14 (N.D. Tex. Dec. 20, 2016) ("To the extent that a cause of action for unjust enrichment is recognized in Texas, it requires that the defendant have profited at the plaintiff's expense.") (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998)). Accordingly, Plaintiff's unjust enrichment claim will be dismissed.

### 7. Civil Conspiracy

Plaintiff brings this claim against all Defendants in this action, alleging that "Defendants agreed, explicitly or implicitly, to engage in unlawful acts including racial discrimination, retaliation, invasion of privacy, and misuse of Plaintiff's labor for PAC operations" and that "Defendants committed multiple overt acts in furtherance of the conspiracy, causing Plaintiff harm." (Compl., Dkt. 1, at 59). First, Defendants argue that "Plaintiff bases his conspiracy claim on alleged acts related to his Section 1981 and unjust enrichment claims" but "neither one suffices," because "[c]ivil conspiracy is a derivative tort, meaning that a defendant's liability for conspiracy depends on participation in some underlying tort." (Mot. Dismiss, Dkt. 14, at 17) (citing *Davis v. Cisneros*, 744 F. Supp. 3d 696, 732 (W.D. Tex. 2024)) (quotations omitted). Alternatively, Defendants contend that "Plaintiff fails to offer or even attempt to offer any allegations to support the five elements for a civil conspiracy claim under Texas law." (*Id.*).

The Court begins its analysis by detailing the elements of a civil conspiracy claim under Texas law:

> Civil conspiracy involves a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. An action

for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. An actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. This inherently requires a meeting of the minds on the object or course of action. Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement.

*VanAuken v. Clark*, No. 1:22-CV-602-LY, 2023 WL 2825852, at *7 (W.D. Tex. Jan. 31, 2023), *report and recommendation adopted*, No. 1:22-CV-602-LY, 2023 WL 2920313 (W.D. Tex. Mar. 13, 2023) (citations and quotations omitted). Here, again, the Court concludes that Plaintiff has alleged only "a formulaic recitation of the elements of" a claim for civil conspiracy, which is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (citation modified). Plaintiff cannot just allege that there was a civil conspiracy—Plaintiff must offer allegations to support each of the five elements for a civil conspiracy claim under Texas law. *See Iqbal*, 556 U.S. at 678 (finding that "mere conclusory statements" do not suffice to defeat a motion to dismiss). Consequently, the Court finds that Plaintiff has failed to state a claim for civil conspiracy against any defendant.

### 8. Alter Ego / Piercing the Corporate Veil

Plaintiff purports to seek relief "hold[ing] Ward personally liable" because he "exercised complete domination over PMI, Market Rithm, and the PACs; observed no meaningful corporate formalities; and used the entities interchangeably to commit wrongful acts including discrimination, retaliation, and data intrusion." (Compl., Dkt. 1, at 60). Plaintiff labels this cause of action "Alter Ego / Piercing the Corporate Veil." (*Id.*). Plaintiff's assertion is not a legally cognizable cause of action. *Arthur Digital Assets, Inc. v. Lumerritt Res. LLC*, No. 4:23-CV-01500, 2023 WL 9184037, at *3 (S.D. Tex. Aug. 1, 2023) ("Generally, piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts.") (citing *Shangdong Yinguang Chemical Industries Joint Stock*

*Co., Ltd. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010); *id.* ("Similar to a pierce the corporate veil claim, alter ego is not a claim or independent cause of action, it is a remedy to enforce a claimed substantive right. Therefore, absent a cognizable cause of action this remedy is unavailable.") (citations and quotations omitted).

As such, the Court must dismiss this claim. *See* Fed. R. Civ. P. 12(b)(6); *Mandawala v. Baptist Sch. of Health Pros.*, No. SA19CV01415JKPESC, 2020 WL 5250642, at *2 (W.D. Tex. Sept. 3, 2020) ("A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.").

### 9. Negligence Per Se

Plaintiff brings this claim against Nguyen and PMI pertaining to the incident described above, *supra* Section III(B)(2), in which Nguyen allegedly installed a "Google Chrome browser extension on Plaintiff's synced personal Google profile." (Compl., Dkt. 1, at 60). Plaintiff claims that Nguyen's action "constituted a breach of computer security in violation of Texas Penal Code § 33.02 and a negligent failure to safeguard sensitive personal information in violation of Texas Business & Commerce Code § 521.053."[21] (*Id.*).

"Under Texas law, '[n]egligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims.'" *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 529 (5th Cir. 2018) (quoting *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997)). "Texas courts 'will not disturb the Legislature's regulatory scheme by judicially recognizing a cause of action' not contemplated in the statute." *Armstrong v. Sw. Airlines Co.*, No. 3:20-CV-3610-BT, 2021 WL 4391247, at *3 (N.D. Tex.

---

[21] *See* Tex. Penal Code § 33.02(a) ("A person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."); Tex. Bus. & Com. Code § 521.053 (providing notification requirements for a business after a breach of security involving sensitive personal information has occurred).

Sept. 24, 2021) (quoting *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001)). Indeed, many Texas state courts and federal courts applying Texas law "have declined to recognize negligence per se claims based upon statutes that do not create a private right of action." *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1004 (E.D. Tex. 2024) (collecting cases). To prevail on a negligence per se claim, a party must also establish that the violative conduct was the proximate cause of that party's injuries. *Powell v. Keeley*, 795 F. Supp. 2d 587, 592 (S.D. Tex. 2011) (citing *Carter's Shooting Ctr.,* 20 S.W.3d 262, 265 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)).

Defendants argue that neither statute Plaintiff identifies can serve as a basis for a negligence per se claim. (Mot. Dismiss, Dkt. 14, at 18). First, Defendants contend that "a civil claim for a violation of Chapter 33 of the Penal Code must be brought under Texas Civil Practice and Remedies Code § 143.001,"[22] which Plaintiff fails to establish. (*Id.*). The Court agrees with Defendants' contention and, following the precedent of many state and federal courts in Texas, will decline to read a private right of action into Texas Penal Code § 33.02. However, construing Plaintiff's Complaint liberally, as he is proceeding *pro se*, the Court continues its analysis of this claim under Texas Civil Practice and Remedies Code § 143.001, which mandates that in order to hold an individual liable for a violation of Chapter 33, a plaintiff must "prove that (1) an individual knowingly and intentionally accessed their computer, computer network, or computer system; (2) the individual did not have the effective consent of the owner to do so; and, (3) the owner suffered damages as a result. There is no effective consent if the individual's access is outside the scope of the consent actually granted." *In re Simons Broad., LP*, No. CIV. W-11-CA-172, 2013 WL 9542015, at *18 (W.D. Tex. Nov. 19, 2013) (citing Tex. Penal Code Ann. § 33.02(a), 33.01(12)(E)).

---

[22] Tex. Civ. Prac. & Rem. Code Ann. § 143.001 ("A person who is injured or whose property has been injured as a result of a violation under Chapter 33, Penal Code has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally" and "must bring suit for damages under this section.").

The Court finds that, at this stage, Plaintiff's allegations for a negligence per se claim under Texas Civil Practice and Remedies Code § 143.001 suffice to state a claim upon which relief may be granted. Plaintiff claims that Nguyen knowingly and intentionally accessed his computer; Nguyen did not have Plaintiff's effective consent to do so; and that Plaintiff suffered damages as a result. (Compl., Dkt. 1, at 40–42). While Defendants contend that Plaintiff's claim fails because "the complained-of access took place on his company workstation," (Reply, Dkt. 19, at 8), Defendants do not provide any authority to confirm that this fact would make a difference under Plaintiff's alleged claim. Similarly as to the prior analysis as to vicarious liability, the Court finds that since a tort is at issue the Court cannot ascertain whether Nguyen acted in a manner considered in the course and scope of her employment without knowing yet the full circumstances surrounding this alleged incident. Accordingly, Plaintiff's negligence per se claim under Texas Penal Code § 33.02 may proceed against both Nguyen and PMI. The Court warns, however, that Plaintiff will be unable to recover under both claims regarding the Google Chrome extension incident as his case progresses.[23]

Finally, Plaintiff seeks to bring a negligence per se claim under Texas Business Code § 521.053. "Because § 521.151 of that Act gives sole enforcement authority to the Texas [A]ttorney [G]eneral, [Plaintiff] is not entitled to relief under the Act." *Martinez v. Williams Rush & Assocs. LLC*, No. 1:24-CV-01480-RP, 2025 WL 2182330, at *10 (W.D. Tex. Apr. 3, 2025), *report and recommendation adopted*, No. 1:24-CV-1480-RP, 2025 WL 2598374 (W.D. Tex. Sept. 8, 2025) (citing Tex. Bus. & Com. Code § 521.151(a) ("A person who violates this chapter is liable to the state for a civil penalty

---

[23] "In Texas, a party is entitled to sue and seek damages on alternative theories of liability." *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 982 (W.D. Tex. 2011). However, the "one satisfaction rule" "limits a plaintiff's recovery [for the same injury] to one of several overlapping theories, notwithstanding that elements required under the separate theories of action vary somewhat, and notwithstanding that the amounts awarded vary from claim to claim." *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 80 (Tex. App.–El Paso 1998, pet. denied).

of at least $2,000 but not more than $50,000 for each violation. The attorney general may bring an action to recover the civil penalty imposed under this subsection.")). Consequently, Plaintiff's negligence per se claim for an alleged violation of Texas Business Code § 521.053 may not proceed.

## 10. Gross Negligence / Malice

While the Court is construing Plaintiff's Complaint liberally, as is customary for *pro se* plaintiffs, the Court finds that Plaintiff's allegations for gross negligence / malice  do not state a plausible claim for relief to survive Defendants' Motion to Dismiss. *Iqbal*, 556 U.S. at 679. Plaintiff cannot just cite to all of the conduct described throughout his Complaint to constitute a claim for "gross negligence and /or malice." (Compl., Dkt. 1, at 61). Plaintiff uses mere conclusory statements that do not permit the Court to infer that Plaintiff is entitled to any relief. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Plaintiff does not even attempt to fully delineate the elements of these alleged claims. Thus, Plaintiff's claim for gross negligence / malice will be dismissed.

## 11. False Imprisonment

For his last claim, Plaintiff asserts a false imprisonment claim against Nguyen and PMI because Nguyen alleged "intentionally restrained Plaintiff's freedom of movement by ordering him to sit-or physically kneel-beside her workstation for extended periods while she reprimanded, nit-picked, or surveilled his work" "[o]n multiple occasions in 2025." (Compl., Dkt. 1, at 61). Under Texas law, the essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). "[A] detention can be effected by intentional use of any means to terminate a person's freedom of movement, including actual physical restraint, or by explicit or implicit threats of force." *De La Fuente v. United States*, No. CIV.A.L-08-87, 2010 WL 2487942, at *5 (S.D. Tex. Mar. 31, 2010).

31

"In contrast, an individual is not detained when he or she is free to leave because there is neither physical restraint nor severe enough threats to effectively restrain the individual." *Garcia v. Randolph-Brooks Fed. Credit Union*, No. SA-18-CV-00978-OLG, 2019 WL 1643741, at *4 (W.D. Tex. Apr. 16, 2019).

The Court finds that Plaintiff's allegations do not state a plausible claim of false imprisonment. Plaintiff's allegations do not suggest that Nguyen either physically restrained him or severely threatened him enough to be "effectively restrain[ed]." *Id.* Plaintiff's assertions that he "reasonably believed that leaving these forced sessions would result in immediate termination, retaliation, or further humiliation" and "had no reasonable means of escape given the power dynamics and explicit threats to his employment," (Compl., Dkt. 1, at 61), do not raise a right to relief above the speculative level. Plaintiff does not elsewhere allege any facts suggesting that Nguyen's actions involved either physical restraint or an explicit or implicit threat of force, as is required.  Accordingly, the Court will dismiss Plaintiff's false imprisonment claim against Nguyen and PMI.

## V. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 14), is **GRANTED IN PART**, such that Plaintiff's claims of retaliation under 42 U.S.C. § 1981; intentional infliction of emotional distress; unjust enrichment; civil conspiracy; alter ego / piercing the corporate veil; negligence per se under Texas Business Code § 521.053; gross negligence / malice; and false imprisonment are **DISMISSED WITH PREJUDICE** and Defendants Trump Victory PAC, CRPAC, Market Rithm, Christian Morano, and Lawrence Ward are **DISMISSED** from this matter.

Accordingly, the live claims in this case are Plaintiff's § 1981 race discrimination and hostile work environment claims against PMI; CFAA claim against Nguyen and PMI; intrusion upon

seclusion claim against Nguyen; civil assault claim against Rader; and negligence per se claim under

Texas Civil Practice and Remedies Code § 143.001 against Nguyen and PMI.[24]

**IT IS FURTHER ORDERED** the Clerk of Court shall **TERMINATE** Trump Victory

PAC, CRPAC, Market Rithm, Christian Morano, and Lawrence Ward as defendants in this case.

**SIGNED** on June 1, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[24] While Plaintiff has not requested to amend his complaint, the Court notes here that it would not be inclined to grant such a request, because courts need not afford a pro se plaintiff an opportunity to amend if "he has already pleaded his best case." *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Given the length of Plaintiff's complaint and the fact that he raised thirteen separate causes of action, the Court concludes Plaintiff has already pleaded his best case.